## COLLINS v. MONTGOMERY et al.

PLAINTIFF, January 10th, 1858, in a suit entitled " C. v. M. and others, composing the Wisconsin Quartz Mining Co.," a corporation, attached a quartz mill and ledge belonging to the corporation. June 26th, 1858, the complaint was amended, so as to make the corporation, as such, the party defendant, and judgment was rendered against the company August 14th, 1858, the property sold, and plaintiff the purchaser. October, 1857, W. received from the corporation a chattel mortgage on this property, had decree of foreclosure August 9th, 1858, sale October following—W. the purchaser. Defendants here are in possession, under Sheriff's sale on the decree. Plaintiff claims title under his judgment and sale : Held, that he cannot recover; that he acquired no lien by his attachment, because the property attached belonged to the corporation, which was not a party to the suit until after the levy and return of the writ; that plaintiff's rights attach only from the date of his judgment, August 14th, 1858, and his lien being subsequent to the lien of W.'s judgment, August 9th, 1858, under which defendants claim, the latter have the better right.

The chattel mortgage given, in this case, to Woodville, gave no lien upon the property. See facts.

APPEAL from the Fourteenth District.

The case was tried by the Court, and the findings were substantially as follows :

This is an action of ejectment, to recover the Wisconsin Quartz Mill and Quartz Ledge, situated in Grass Valley township, Nevada county. On the tenth of January, 1858, plaintiff brought suit against Z. Man-

sau, C. Riley, and others, composing the Wisconsin company, to recover three hundred and sixty dollars, balance due for work, labor, and services rendered defendants, and on the same day caused an attachment to issue against the property of defendants, which was levied, on the same day, upon the premises in controversy.

June 26th, 1858, plaintiff amended his complaint, so as to make the "Wisconsin Quartz Mining Company," a corporation, the party defendant.

The affidavit for attachment was entitled *John Collins* v. *Z. Mansau et al.*   August 14th, 1858, plaintiff had judgment against the "Wisconsin Quartz Mining Company," and on the seventeenth of the same month, an execution was issued thereon, and levied on the property attached, which was sold by the Sheriff on the fifteenth of October, following, plaintiff becoming the purchaser, and in due time receiving the Sheriff's deed.

Defendants' claim is based on these facts: October 24th, 1857, Thomas Woodville loaned said quartz company $2,000, and received therefor a note, in the name of the company, signed by Joseph Woodworth, president, and H. G. Merrill, secretary of the company, and to secure its payment, a mortgage was executed to Woodville, upon the premises in question.   The mortgage begins, "Know all men by these presents, that we, Joseph Woodworth, Zephaniah Mansau, Cornelius Reilly, William Rodham, Charles Jones, and Patrick Conaty, all of Grass Valley, in the county of Nevada, State of California, miners, being the owners of the capital stock of the Wisconsin Quartz Mining Company, for and in consideration," etc.; then continues as an ordinary deed to Thomas Woodville, with defeasance—the condition being to pay the note.   The instrument is signed, sealed, and acknowledged by the grantors, with an affidavit annexed, as is required in the case of a chattel mortgage.   The body of the affidavit contains the names of the mortgagors and mortgagee, but it is signed by the former only.   Duly recorded in Chattel Mortgage Book, October 29th, 1857.

June 29th, 1858, Woodville brought suit to foreclose this mortgage, had decree the ninth of August, following, under which the property in question was sold October 18th, 1858, and bought in by Woodville, who subsequently assigned the certificate of sale to defendants, and they received the Sheriff's deed.

The deeds of both plaintiff and defendants were recorded, the former, April 23d, 1859, the latter, April 15th, 1859.

. April 26th, 1859, defendants sued for possession of the property, and on the fourteenth of June, following, obtained judgment, and were put in possession by the Sheriff. Plaintiff here was not party to that suit, though in possession previous to the time the Sheriff put defendants in possession. Defendants were duly served with summons in all the suits before named.

Upon the foregoing facts, the Court below found that plaintiff could not recover, on the grounds, among others—1st, that plaintiff's writ of attachment run only against the property of the defendant in that suit, and that the Wisconsin company, as a corporation, was not a party defendant until after the complaint was amended, which was long after the writ was executed, and that, hence, plaintiff acquired no lien by his attachment; 2d, that plaintiff's lien dated from the rendition of his judgment, which, being five days later than the judgment of defendants against the corporation, which was equally a lien on the property, gives defendants the better right, even admitting the irregularity of the Woodville mortgage.

Judgment for defendants. Plaintiff appeals.

*A. C. Monson,* for Appellant.

The Woodville mortgage never was a lien or incumbrance upon the property; as a mortgage of real estate, it was never recorded—it was only recorded in Book of Chattel Mortgages. As a chattel mortgage, it had no validity, except between the parties to it, because the mortgagee, Woodville, did not make the affidavit required by statute. The failure on the part of Woodville to make this affidavit rendered the mortgage void, as to plaintiff, who was a subsequent attaching and judgment creditor, in good faith. If the Woodville mortgage was void, as to plaintiff, then he acquired the prior lien by his attachment, and the judgment of the Court below should have been in his favor. The counsel, in the Court below, urged the following objections to the Woodville mortgage:

1. That the place of payment was not mentioned, as required by the statute; that the words used are, "Payable at the office of Geo. A. Montgomery & Co., Mill street, Grass Valley," without mentioning the county or State.

2. That it was not executed by those who, by law, are authorized to execute sealed instruments for a corporation; that the law vests the corporate power in a board of trustees, who alone are authorized to act in that behalf for a corporation. (Wood's Dig. sec. 484.)

3. It was not executed under the corporate seal, nor does it purport to be, but the seal, respectively, of each of the persons signing it.

4. That the mortgage was not properly acknowledged.

*McConnell & Garber and A. B. Dibble*, for Respondents.

I. The mortgage was, from the date of its execution, a valid and subsisting lien on the property in dispute, as against the corporation and the plaintiff. This, if true, disposes of the case, for' defendants' title would relate back to the date of the mortgage.

There were two objections urged on the trial—first, that the mortgage was not executed in conformity with the provisions of the act in relation to chattel mortgages.

To this objection we reply—1st, that it was so executed, in every particular; and 2d, that if not, it was good as a common law mortgage of the realty. We deny both the premises ·and the conclusion—the fact and the inference of law. (*Haffley* v. *Maer,* 13 Cal. 13; *Houseman* v. *Chase*, 12 Id. 290.)

The remaining objection is, that the mortgage is the act and deed of the individual stockholders, and not that of the corporation.

We concede that there is no interest in the corporation, or its property, inhering in any individual stockholder, which will pass by his deed or mortgage; but the point here is, whether this is not, as it was clearly intended to be, the mortgage of the corporation, executed by all the members, as its duly authorized agents. There can be no doubt that the whole body of the stockholders had the power to execute this instrument in the name of the corporation, and had they so executed it, and signed to it the corporate name, with the addition of their individual signatures, " as agents," or as " owners of all the stock," it would be the mortgage of the corporation.

The old rule, that a corporation can only convey or contract under its corporate seal, is exploded. The acts of a majority of its members, no matter how evidenced, are binding on the corporation. It can contract or convey, in any manner it sees fit, by an agent, duly appointed; the unanimous action of the members would certainly constitute such appointment, and whatever they could authorize another to do, they could do themselves. (2 Kent's Com. 288, *et seq.* 296; *Rowe* v. *Table Mountain Co.* 10 Cal. 441.)

This mortgage may be regarded as executed by persons duly empowered to bind the corporation; the intent to bind it is plainly manifested;

Collins v. Montgomery.

the name of the principal appears in the instrument, and the parties executing describe themselves as agents—the words " owners, etc.," *ex vi termini*, importing an agency, and this is sufficient to render this mortgage valid, as against the corporation, and if so, equally valid as against the plaintiff.

The following authorities establish the proposition, that Courts will always effectuate the intent of the parties as gathered from the whole writing, except when prevented by some rigid rule of technical law; that the rule above cited from Story applies only to instruments to which a seal is not only affixed, but essential; that all others stand on the same footing, whether affecting real estate or not. *(New England M. J. Co.* v. *De Wolf,* 8 Pick. 56; *Magill* v. *Hinsdale,* 6 Conn. 465; *Deming* v. *Bullitt,* 1 Blackf. 41; *Hunter's Ad'ms.* v. *Miller's Ex'rs.* 6 Ben. Mon. 612; *Johnson* v. *Smith,* 21 Conn. 632; *Geddens* v. *Byers,* 12 Texas, 75; *Evans* v. *Wells,* 22 Wend. 340–1; Story on Agency, sec. 160, *(a)* sec. 154; *Hale* v. *Woods,* 10 N. H. 470; *McDonald* v. *Bear River Co.* 13 Cal. 220; 1 Am. Leading Cases, 587–589, and cases cited; 1 Parsons on Cont. 48, and cases; *Ord* v. *McKee,* 5 Cal. 515; *Phelan* v. *Olney,* 6 Id. 478; *McMillan* v. *Richards,* 9 Id. 365; *Clark* v. *Boyreau,* 14 Id.; *Flagg* v. *Mann,* 2 Sumner.)

II.   The attachment was a nullity, and constituted no lien on the property in dispute.    When the action was commenced, and the attachment issued, it was entitled *Collins* v. *Mansau et al., composing the Wisconsin Company*—not making the corporation a party.    The affidavit was entitled *" John Collins* v. *Mansau et al.,"* and stated that the " defendant " was indebted, etc., without more.    Some time afterwards, an amendment was made, substituting the corporation ·for the former defendants.    This was, substantially, a new action.    Such a change is not an amendment.    Had a default been suffered, a judgment against the corporation would have been a nullity, as rendered by a Court, without having acquired jurisdiction.    The amendment, in any event, rendered the attachment void.    *(Denny* v. *Ward,* 3 Pick. 199.)

III.   If plaintiff acquired no lien by the attachment, his claim by judgment lien and purchase is inferior to defendants' under the decree of foreclosure rendered prior to the judgment.

Cope, J. delivered the opinion of the Court—Field, C. J. concurring.

We are of opinion that no lien was acquired upon the property in

Chapin *v.* Broder.

controversy, either by the mortgage to Woodville, or under the attachment sued out by the plaintiff. In the view we take of the case, however, the objections to the mortgage are immaterial. With reference to the attachment, it is sufficient to say that the property belonged to a corporation, and that the attachment was issued in a suit to which the corporation was not a party. It is true, the complaint was afterwards amended, and the corporation brought in, but the attachment had been executed and returned, and no additional steps were taken to perfect the lien. It is clear, therefore, that no lien was acquired under the attachment, and that the rights of plaintiff only date from the rendition of his judgment on the fourteenth of August, 1858. The defendants claim under a judgment rendered five days before, and the Court finds that this judgment became a lien upon the property anterior to that of the plaintiff. This disposes of the case in favor of defendants, and the judgment is therefore affirmed.